# IN THE COURT OF APPEALS OF IOWA

No. 25-1661
Filed July 8, 2026

**In re the Marriage of Shane C. Henderson and Jessica L. Henderson**

Upon the Petition of
**Shane C. Henderson,**
Petitioner–Appellee,

And Concerning
**Jessica L. Henderson,**
Respondent–Appellant.

Appeal from the Iowa District Court for Story County,
The Honorable Jennifer Miller, Judge.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

Payton C. Kitterman and Stephen C. Humke of Miller & Evans PLC, Des Moines, attorneys for appellant.

Lucas W. Otto of Otto Law Office, PLLC, Newton, attorney for appellee.

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

Jessie Henderson appeals portions of the district court's decree dissolving her marriage with Shane Henderson, including its decision to grant Shane physical care of their four children, the spousal support award, and its determination that each party pays their own attorney fees. Jessie argues that the parties should have shared physical care of the children because her mental health has stabilized and she was historically the primary caregiver. Jessie also argues that the spousal support award was insufficient because she did not work for most of the marriage and there is a large disparity between the parties' earning capacities. Finally, Jessie argues that Shane has a greater ability to pay trial attorney fees. The parties also each request appellate attorney fees. For the reasons stated below, we affirm and remand for a determination of reasonable appellate attorney fees.

## BACKGROUND FACTS & PROCEEDINGS

Shane and Jessie married on November 22, 2011. They have four children: R.R.H., born in 2015; D.L.H., born in 2017; L.C.H., born in 2018; and F.H.H., born in 2020. The district court record regarding the children is limited beyond that they are in therapy and generally doing well in school. At the time of trial, both parties were thirty-four years old and living in the marital home with the children.

The parties met at Iowa State University. Shane did not complete his bachelor's degree but later obtained his associate's degree. He now works for the Ames Fire Department, provides health insurance for the children, and earns an annual gross income of $87,400. He also has a pension. Jessie has a bachelor's degree in fashion apparel merchandising. She worked in sales for six months after graduating from college, but, upon the birth of the parties' first child, decided to stay home to care for the children. However, Jessie did

take on various jobs and responsibilities to supplement the parties' income. As of April 2025, Jessie works in sales at car dealership in Boone, Iowa and earns an approximate annual gross income of $56,436, contingent on sales commission. She has no retirement savings.

The parties separated in July 2024 upon Jessie's request for a divorce. Jessie then moved to Des Moines to live with a man she met while working at her brother's company, while Shane continued to live in the marital home with the children. The district court found that Shane then became the primary caregiver, and Jessie rarely saw the children. In October, Shane filed a petition for dissolution of marriage. Around this time, Jessie began experiencing mental health struggles and voluntarily committed herself to a hospital, once that December, and twice in February 2025.

There were several incidents where each party called 911 on the other party—Shane called once when Jessie made concerning statements to the children about her mental health and another time because he claimed Jessie attacked him in front of the children. Jessie called once because she claimed Shane tried to hit her with his truck. On occasion, Jessie discussed her mental health and relationship with Shane with the children.

Upon her final release from the hospital, Jessie began unilaterally making changes to the children's routines (e.g., their bedtimes) and was not responsive to Shane's requests that such routines not be disturbed. There were also difficulties in communication between the parties regarding childcare schedules and the children's needs.

Jessie testified at trial that she stopped taking her medications because she felt her mental health improved, but she also admitted to making concerning statements regarding her mental health and no longer wanting to

be a mother. Despite this, Jessie requested shared care with Shane arguing she was historically the primary caregiver, had stabilized her mental health, had rejoined her church, and was now employed.

After trial, the district court found that it was in the children's best interest to grant Shane physical care of the children with liberal parenting time for Jessie. The district court then ordered Shane to take on the joint marital debt including the home mortgage and $19,451 of consumer debt, to pay Jessie a property equalization payment, and to pay transitional spousal support of $1000 per month to Jessie for one year; it also ordered Jessie to pay child support. Finally, the district court ordered that each party pay their own attorney fees and one-half of the court costs.

Jessie appeals the physical care determination, requests additional spousal support, and challenges the trial attorney fee decision. Shane urges we affirm the dissolution order. Both parties request appellate attorney fees.

## STANDARD OF REVIEW

"We review cases tried in equity, such as dissolution proceedings, de novo." *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016); *see also* Iowa R. App. P. 6.907. This includes both custody determinations and spousal support awards. *See In re Marriage of Turner*, No. 24-1878, 2025 WL 2538663, at *2 (Iowa Ct. App. Sept. 4, 2025); *In re Marriage of Kloppe*, No. 24-1670, 2025 WL 2922000, at *2 (Iowa Ct. App. Oct. 15, 2025). "In equity cases . . . the appellate court gives weight to the fact-findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g). We are only to disturb the district court's ruling "when the ruling fails to do equity." *In re Marriage of Towne*, 966 N.W.2d 668, 674 (Iowa Ct. App. 2021).

Further, "[w]e review an award of trial attorney fees in a dissolution-of-marriage action for an abuse of discretion." *Id.* at 680. "An award of attorney fees is not a matter of right but rest in the court's discretion considering the parties' financial positions." *In re Marriage of McLaughlin*, 526 N.W.2d 342, 346 (Iowa Ct. App. 1994).

## DISCUSSION

### I. Physical Care

Physical care of a child refers to "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2025). Disputes regarding a child's physical care "are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Thus, in such cases, "the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

To determine what is in the children's best interests, we consider what gives the children "the opportunity for maximum continuous physical and emotional contact possible with both parents, unless direct physical or significant emotional harm to the child[ren] may result from this contact." Iowa Code § 598.1(1). Our goal is to "place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695. Generally, "the best interest of children is promoted by stability and continuity." *Id.* at 691.

When a party is granted physical care, the other party is often granted liberal visitation rights to promote the children's best interests. *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992); Iowa Code

§ 598.41(1)(a). So, to determine whether parties should share physical care or if it should be granted primarily to one party, Iowa courts refer to the factors listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The *Winter* factors are as follows:

> 1. The characteristics of each child, including age, maturity, mental and physical health.
>
> 2. The child's emotional, social, moral, material and educational needs of the child.
>
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.
>
> 4. The capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the child.
>
> 5. The interpersonal relationship between the child and each parent.
>
> 6. The interpersonal relationship between the child and its siblings.
>
> 7. The effect on the child of continuing or disrupting an existing custodial status.
>
> 8. The nature of each proposed environment, including its stability and wholesomeness.
>
> 9. The preference of the child, if the child is of sufficient age and maturity.
>
> 10. The report and recommendation of the attorney for the child or other independent investigator.
>
> 11. Available alternatives.
>
> 12. Any other relevant matter the evidence in a particular case may disclose.

*Id.*

Further, though the factors listed in Iowa Code section 598.41(3) do not apply directly to physical care determinations, we may still consider these factors when they are relevant. *Hansen*, 733 N.W.2d at 696. The relevant factors for this case include: (1) the suitability of each parent to serve as the children's custodian; (2) whether the children's psychological, emotional, and/or developmental needs will suffer by not having active contact with both parents; (3) the ability of the parents to communicate about the children's needs; (4) whether the parents, before and after the separation, actively cared for the children; and (5) if each parent can support the relationship between the children and the other parent. Iowa Code § 598.41(3).

Here, the district court properly weighed the factors in *Winter* and Iowa Code section 598.41(3) to find that it was in the children's best interest to award Shane physical care. First, the existence of mental health struggles are not dispositive in whether we award physical care, and we do not penalize a parent purely due to their mental health. *Cf. In re Marriage of Lewis*, No. 17-1983, 2019 WL 1752652, at *3 (Iowa Ct. App. Apr. 17, 2019). Instead, we consider how the parent's management of their mental health struggles, such as following their treatment plans, affects the physical, mental, and emotional welfare of the children. *See id.*

Based on how the district court weighed the relevant factors, its decision advances the best interests of the children. Jessie did not comply with her treatment and medication plans, which suggests that Jessie is not seeking treatment in a way that serves the children's best interests. The parties' communication was also lacking, as Jessie often did not compromise with Shane regarding the children's needs nor discuss childcare with Shane.

Further, after the separation, Jessie was not a steady presence in the children's lives—she would leave and reappear at various times and

7

sometimes failed to be present on important days, such as birthdays. She did not always act diplomatically toward Shane, she spoke negatively about him to the children, and at times she involved the children in conflict between herself and Shane. Shane, however, provided stability for the children and consistently communicated with Jessie. The record shows that he would better support the children's relationship with their mother than she would support the children's relationship with him.

Also, after Jessie moved out of the marital home, Shane was the children's only caretaker. Despite Jessie historically being the caretaker, the district court properly gave less weight to the history of the parties' caretaking roles given Jessie's recent spike in erratic behavior—such as her more recent unreliable presence and her disregard of boundaries and the children's routines.

The children's best interests were served by granting physical care to Shane due to the stability he can provide, and his ability to maturely engage with Jessie and the children. Jessie's failure to follow mental health treatment plans also contributes to that determination. Since the district court's decision is in the children's best interests, we affirm the physical care determination.

## II. Spousal Support

In this case, the district court awarded Jessie transitional spousal support of $1,000 per month for twelve months. On appeal, Jessie instead requests that she receive traditional and rehabilitative spousal support of $1,500 per month for ten years.

Transitional spousal support is awarded "where the recipient spouse may already have the capacity for self-support at the time of dissolution but

needs short-term assistance in transitioning to single life." *In re Marriage of Sokol*, 985 N.W.2d 177, 186 (Iowa 2023). Rehabilitative spousal support, on the other hand, allows a dependent spouse to receive support during a period of re-education or training after divorce. *Id.* at 185–86. Rehabilitative support is inappropriate when re-education, training, or time to become self-supporting is not needed. *Id.* at 186. And, traditional spousal support can be awarded to recipient spouses in long-term marriages—usually defined as those marriages lasting at least twenty years—to help them maintain the lifestyle to which they became accustomed. *Id.* at 185.

Spousal support is not awarded as of right but is instead calculated by considering the factors in Iowa Code section 598.21A as applied to the facts of each individual case. *Id.* Further, we afford considerable deference to the district court's weighing of factors when determining a spousal support award. *In re Marriage of Gust*, 858 N.W.2d 402, 406–07 (Iowa 2015).

To determine whether the transitional spousal support award here was proper, we review the district court's consideration of the following factors: the length of the marriage; the parties' age, physical, and emotional health; the distribution of property; the parties' educational level when married and when the action was brought; the earning capacity of the recipient, considering education, training, employment skills and experience, amount of time absent from the workforce, and expenses needed to obtain training to return to work; and the ability of the recipient spouse to become self-supporting at a comparable standard of living to what they enjoyed while married. Iowa Code § 598.21A(1)(a)–(f).

The district court made its determination based on the following: the relative short length of the marriage; the fact that Jessie is young and in good physical health; Jessie's four-year college degree; Jessie's ability to live a

lifestyle comparable to her life before divorce if she continues working at her job; and the fact that Shane took on all of the marital debt. This was balanced against the expenses that Jessie would have to incur when moving into a new home. Thus, since Jessie was already self-supporting but needed assistance in her transition to single life, transitional spousal support was proper.

However, neither traditional nor rehabilitative spousal support are necessary. Jessie does not need re-education or training to become self-supporting since, as the district court pointed out, she already is self-supporting. Further, due to the relatively short length of the parties' marriage, traditional spousal support is not appropriate. Thus, the district court's transitional spousal support award of $1,000 per month for twelve months is equitable for both parties, and we will not disturb it.

## III.  Attorney Fees

Iowa district courts have "considerable discretion in awarding attorney fees." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). The parties' abilities to pay for attorney fees is the dispositive question in whether attorney fees should be awarded, and such fees must be "fair and reasonable." *Id*. Unless the party appealing shows that the district court abused its discretion in making its determination, we will not disturb the district court's award (or lack thereof) of attorney fees. *See id*.

Here, the district court properly weighed the parties' respective ability to pay. It relied on the fact that Jessie used a marital credit card to pay for a portion of her attorney fees, so Shane already shouldered some of these costs. Thus, because Jessie failed to show that the district court's denial of her request for attorney fees was not fair or reasonable, we see no reason to reverse that determination.

## IV. Appellate Attorney Fees

"Appellate attorney fees are awarded upon our discretion and are not a matter of right." *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). Whether we award appellate attorney fees "is guided by the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).

After considering these factors, we award Shane fifty percent of his reasonable appellate attorney fees or $5,000 in appellate attorney fees, whichever is less. Because Shane failed to file an appellate-attorney-fee affidavit, we remand to the district court for Shane to submit an appellate-attorney-fee affidavit. *See In re Marriage of Bell*, No. 24-1424, 2025 WL 3022905, at *7 (Iowa Ct. App. Oct. 29, 2025). We order the district court to then determine what portion of Shane's requested appellate attorney fees are reasonable and award Shane appellate attorney fees consistent with this opinion.

## CONCLUSION

We affirm the district court's grant of physical care to Shane, its rehabilitative spousal support award of $1,000 per month for twelve months to Jessie, and its order that each party pay their own trial attorney fees. We remand to the district court to award Shane appellate attorney fees in an amount consistent with this opinion.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**